*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLIFFTON LOUIS STEVENSON,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 346571
Macomb Circuit Court
LC No. 2018-002480-FH

Before: K. F. KELLY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of unlawful imprisonment, MCL 750.349b, and assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a).[1] The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to serve concurrent terms of 160 to 360 months' imprisonment for the unlawful imprisonment conviction and 160 to 240 months' imprisonment for the assault conviction. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On the evening of April 7, 2018, defendant and his girlfriend, Kimberley Burck, solicited the complainant to engage in consensual sex and purchase drugs for the trio. After the complainant purchased the drugs, the three eventually traveled to Burck's home where they engaged in consensual sex and smoked crack cocaine. Several hours later, on the morning of April 8, 2018, defendant brutally assaulted the complainant. The complainant testified that defendant became enraged when he had run out of drugs and discovered that she had concealed some of the crack allotted to her. By contrast, the defense theory was that defendant restrained the complainant and

---

[1] The trial court granted defendant's motion for a directed verdict of an additional charge of possession of marijuana, MCL 333.7403(2)(d), and the jury acquitted defendant of an additional charge of possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*).

struck her only in an effort to subdue her and protect Burck from the complainant's drug-fueled rage. Despite that theory, the jury convicted defendant of unlawful imprisonment and the assault offense.

Defendant was granted a remand[2] to the trial court to address his theory of ineffective assistance of counsel with regard to plea negotiations. Following a *Ginther* hearing,[3] the court concluded that trial counsel did not render ineffective assistance.

## II. PHOTOGRAPHIC EVIDENCE

Defendant argues that the trial court erred by admitting four close-up photographs of the complainant's face because the prejudicial effect of the photographs unfairly outweighed their probative values. We disagree.

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v McBurrows*, 322 Mich App 404, 411; 913 NW2d 342 (2017) (quotation marks and citation omitted). After reviewing the photographs and the record, we conclude that the trial court did not abuse its discretion.

"Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Exclusion is required under MRE 403 only when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Head*, 323 Mich App 526, 541; 917 NW2d 752 (2018).

Defendant was charged with assault with intent to do great bodily harm less than murder. This offense required proof of defendant's intent, and a complainant's injuries can be indicative of intent. *People v Stevens*, 306 Mich App 620, 628-629; 858 NW2d 98 (2014). The four photographs at issue depict bruising, swelling, and abrasions to the complainant's face. The close-up format, in particular, accurately illustrated the nature and extent of the complainant's injuries. The photographs were relevant to assist the jury in determining whether defendant intended to inflict great bodily harm upon the complainant or were injuries incurred in subduing her assault.

Further, photographs may be admitted to corroborate witnesses' testimony. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). In this case, the complainant and medical personnel testified regarding the extent of the complainant's injuries. The testimony of the forensic nurse examiner was particularly clinical in nature. The nurse described each injury by its size and physical attributes. The photographs corroborated this testimony. More

---

[2] *People v Stevenson*, unpublished order of the Court of Appeals, entered October 14, 2019 (Docket No. 346571).

[3] *People v Ginther*, 390 Mich 443; 212 NW2d 922 (1973).

significantly, they provided the jury with a better understanding of the witnesses' testimony regarding the nature and extent of the injuries.

We also disagree with defendant's contention that even if the photographs were relevant, they were unduly prejudicial because the photos were likely to inflame the jurors and distract them from the truly probative evidence. While there is some blood depicted in the photographs, it is not an inordinate amount. The trial court examined the photographs and accurately concluded that they were not particularly gruesome in nature. It is clear that the court considered and weighed the probative value and prejudicial effect before rendering its decision. The court then correctly concluded that any prejudicial effect did not substantially outweigh the probative value of the photographs. The photographs were necessary to establish the essential element of one of the charged offenses, as well as illustrate the complainant's physical condition when mere testimony would not suffice. Accordingly, the trial court did not abuse its discretion by admitting the four close-up photographs of the complainant's face.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present sufficient evidence of intent to support each of his convictions. We disagree. This Court reviews de novo challenges to the sufficiency of the evidence. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). The evidence must be viewed in the light most favorable to the prosecution to determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

The elements of assault with intent to do great bodily harm less than murder include: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). The intent to do great bodily harm is defined as "an intent to do serious injury of an aggravated nature." *Id.* (quotation marks and citation omitted).

Viewing the evidence in the light most favorable to the prosecution and drawing all credibility determinations in the prosecution's favor, there existed ample evidence for a rational jury to find that the prosecution had proven the intent element of assault with intent to do great bodily harm beyond a reasonable doubt. The complainant testified that defendant struck her in the face 15 to 20 times. He also placed his hands around her neck and began to strangle her. The complainant testified that she could not breathe and she thought she would die. She also felt defendant place his hands on her torso and her ribs break. The medical evidence revealed that the complainant suffered, among other things, three broken ribs, severe bruising, and pulmonary contusions. This evidence, demonstrating an assault of overwhelming brutality, was sufficient for a trier of fact to infer that defendant intended the natural consequences of his actions, that is, the infliction of serious injury of an aggravated nature. Accordingly, there was sufficient evidence for the jury to find defendant guilty of assault with intent to do great bodily harm less than murder.

There was also sufficient evidence of intent to support his conviction of unlawful imprisonment. In general, the crime of unlawful imprisonment requires that a defendant knowingly restrain another person with a dangerous instrument, in secret, or to facilitate the

commission of another felony or to facilitate flight after the commission of another felony. MCL 750.349b. In this case, the prosecution's theory was that defendant restrained the complainant to facilitate the commission of the felony of assault with intent to do great bodily harm. "Restrain," as defined by the statute, means "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). The statute further provides that "the restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." *Id*.

The complainant testified that during the assault, she and defendant landed on the floor. He had his hands around her neck. The complainant also could feel defendant's hands on her torso pressing down with such great force that she knew when her own ribs broke. Defendant then instructed Burck to continue holding the complainant down. That defendant forcibly restrained the complainant on the ground was further corroborated by the testimony of Burck's daughter, Kaitlin Gurnett, who testified that when she finally got the bedroom door open, she could see defendant holding the complainant on the ground. In addition, the forensic nurse examiner explained that there were bruises and petechia on the complainant's torso. The nurse opined that pattern of bruising was consistent with fingerprints. From such testimony, a rational juror could infer that defendant knowingly and forcibly confined the complainant so as to interfere with her liberty and that he did so to facilitate the commission of the abuse.

Nonetheless, defendant contends that he restrained the complainant and physically assaulted her in an effort to subdue her so that she would not harm Burck. In support of this theory, defendant cites to Gurnett's testimony that defendant told her that the complainant tried to attack Burck, evidence that Burck had a minor scratch on her forehead, and evidence that the complainant had bruising on her knuckles. He also relies on inconsistencies in the complainant's recounting of the events that rendered her trial testimony implausible and incredible. Although the complainant testified at trial that defendant assaulted her after he discovered that she was concealing drugs, the complainant told the forensic nurse that the assault occurred when she refused to engage in sex. However, it is clear that the jury rejected defendant's theory and found the complainant to be a credible witness. In any event, "the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995). The jury was presented with both parties' interpretations of the evidence, and the jury was to determine which theory was more plausible. This Court will not interfere with the jury's role in determining the weight of the evidence or the credibility of witnesses. *People v Muhammad*, 326 Mich App 40, 60; 931 NW2d 20 (2018). Accordingly, there is no merit to defendant's argument that there was insufficient evidence of intent to support his convictions of unlawful imprisonment and assault with intent to do great bodily harm.

IV. JURY INSTRUCTION

In his Standard 4 brief,[4] defendant argues that the trial court erred by denying his request to instruct the jury regarding the use of nondeadly force in defense of another. We disagree.

This Court reviews de novo jury instructions that involve questions of law, but a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Powell*, 303 Mich App 271, 276-277; 842 NW2d 538 (2013) (citation and quotation marks omitted).

A defendant is entitled to have a properly instructed jury consider the evidence against him. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The trial court must instruct the jury on all the elements of the charged offense, as well as on material issues, defenses, and theories that are supported by the evidence. *People v Rodriguez*, 463 Mich 466, 472-473; 620 NW2d 13 (2000). A trial court is only required to give a requested instruction if it is warranted by the evidence presented. *Riddle*, 467 Mich at 124. "Even if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Milton*, 257 Mich App 467, 475; 668 NW2d 387 (2003).

Defendant requested that the trial court give M Crim JI 7.22, addressing the use of nondeadly force in self-defense or defense of another. This instruction explains that if a person acts in lawful defense of another, his actions are justified and he is not guilty of a crime. M Crim JI 7.22(1). The instruction further provides that the defendant must have honestly and reasonably believed that he had to use force to protect, in this case Burck, from the imminent unlawful use of force by the complainant. In addition, a person is only justified in using the degree of force that seems necessary at the time to protect the other person from danger. M Crim JI 7.22.

A review of the record provides no evidence from which the jury could have drawn reasonable inferences demonstrating all of the elements necessary to support the claim of a defense of others. First, a finding that defendant used nondeadly force was lacking. Rather, the evidence showed that defendant used deadly force when he assaulted the complainant. "Deadly force" has been defined as the force used in a circumstance in which the "natural, probable, and foreseeable consequence of the act is death." *People v Couch*, 436 Mich 414, 428 n 3; 461 NW2d 683 (1990). In this case, defendant punched the complainant in the face 15 to 20 times. He then strangled her to the point where she could not breathe, and she thought she was going to die. Finally, he exerted sufficient force on complainant's torso to break three ribs and cause pulmonary contusions. As a result of the brutality of the assault, the complainant was admitted to the hospital intensive care unit. Death was a natural, probable, and foreseeable consequence of defendant's actions in light of the strangulation alone.

Further, there was no evidence showing any altercation between the complainant and Burck. Defendant relies on Gurnett's testimony that when she opened the door, defendant

---

[4] Defendant filed a brief pursuant to Supreme Court Administrative Order No. 2004-6. Following the *Ginther* hearing, defendant's counsel also filed a supplemental brief, and there is some duplication of issues in these briefs.

exclaimed that the complainant was trying to attack Burck. However, Gurnett testified that she never saw any altercation between the complainant and Burck, neither defendant nor Burck testified, and nothing in the condition of the bedroom suggested that a struggle had occurred. There simply was no evidence presented that the complainant was a threat to Burck, or if she did pose a threat, how significant that threat was. Consequently, there was no evidence from which the jury could find that defendant honestly and reasonably believed that he had to use force to protect Burck from an imminent and unlawful use of force by the complainant. Further, the jury had no basis upon which to evaluate whether defendant used the degree of force reasonably necessary to protect Burck from danger. Because there was no evidentiary support for a nondeadly force instruction, the trial court properly declined to instruct the jury pursuant to M Crim JI 7.22.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In both his Standard 4 brief and brief filed by appellate counsel, defendant asserts that he was denied the effective assistance of counsel on several fronts.

The issue of ineffective assistance of counsel is a mixed question of fact and law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); see also *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). To demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms. *Id.* Establishing prejudice necessarily requires demonstrating a reasonable probability that the result of the proceedings would have been different but for counsel's error. *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). However, because the *Ginther* hearing was limited to issues involving the plea negotiations, review of defendant's other ineffective-assistance issues is limited to mistakes apparent from the record. *Head*, 323 Mich App at 539.

## A. FAILING TO FILE A MOTION TO QUASH THE BINDOVER

In his Standard 4 brief, defendant argues that his attorney was ineffective for failing to file a motion to quash the bindover when the complainant did not appear and testify.[5] Because sufficient evidence was presented to support the bindover, this ineffective-assistance claim is without merit, and any efforts by counsel to challenge the bindover would have been futile. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

Burck's daughter, Gurnett, testified at the preliminary examination that on the morning of April 8, 2018, she awoke to the sounds of somebody screaming for help and asking that 911 be called. When she went across the hall to her mother's bedroom, she opened the door and saw defendant holding "a lady" down on the floor. Gurnett heard this woman say, "Help." The

---

[5] At trial, the complainant testified that she did not receive notice of the preliminary examination. She explained that in June and July of 2018, she was arrested, jailed, and sent to a court-ordered rehabilitation facility.

woman's face was bloodied and bruised, and her eyes were swollen. Defendant told Gurnett that the woman had "tried destroying the room and attacking [Burck]." Nobody said that the woman was trying to steal from Burck.

Detective David Huffman testified that on April 8, 2018, he was not able to interview the complainant at the hospital because she was unable to talk. The following day, however, he went back to the hospital and learned that the complainant had a fractured orbital socket as well as three broken ribs. During an interview at the jail, defendant stated that he, Burck, and the complainant went to Burck's house to smoke crack and have consensual sex. At some point, they fell asleep. Defendant then stated that he woke up to a commotion between the complainant and Burck, and he believed that the complainant was stealing. Defendant claimed that the complainant was "body slamming" Burck. Defendant then admitted that he pinned the complainant to the ground. When Det. Huffman confronted defendant about the extent of the complainant's injuries, defendant admitted that he punched the complainant in the face "a couple of times." Although defendant denied "choking" the complainant, he admitted that he may have had his hands around her neck.

Based on the testimony presented at the preliminary examination, there was evidence of each element of unlawful imprisonment and assault with intent to do great bodily harm less than murder, as well as probable cause to believe that defendant committed the crimes. Given that there was sufficient evidence to support the bindover, trial counsel was not ineffective by failing to file a futile motion to quash. *Fonville*, 291 Mich App at 384.

## B. FAILURE TO PROPERLY PURSUE A NEGOTIATED PLEA AND SENTENCING AGREEMENT

In his Standard 4 brief, and in his supplemental brief after remand, defendant asserts that before trial, the prosecutor offered a plea deal and sentencing agreement, the terms of which provided that in exchange for his agreement to plead guilty to unlawful imprisonment and assault with intent to do great bodily harm less than murder, the drug charges would be dismissed and the minimum sentence to be imposed would be five years or 58 months in prison.[6] Defendant asserts that trial counsel was ineffective by failing to secure him the benefit of the offered agreement.

A defendant is entitled to the effective assistance of counsel in the plea-bargaining process. *People v Pennington*, 323 Mich App 452, 461; 917 NW2d 720 (2018). To prevail on an ineffective-assistance argument in the context of pleas, a defendant must show that the outcome of the plea negotiation process would have been different with competent representation. *Id.*

During the *Ginther* hearing, trial counsel testified that after being retained, he engaged in plea and sentencing discussions with the assistant prosecutor. During these initial discussions, it was apparent to trial counsel that he and the assistant prosecutor did not agree on the prosecutor's evaluation of the sentencing guidelines. Trial counsel acknowledged that the assistant prosecutor had anticipated that the guidelines range would result in a minimum sentence of either 5 years or

---

[6] In his Standard 4 brief, defendant claims that the deal provided for a minimum sentence of five years. In his supplemental brief after remand, appellate counsel represents that the agreed upon minimum sentence was 58 months.

58 months. In any event, trial counsel adamantly asserted that at no point was a plea deal ever offered by the prosecution. Moreover, it was trial counsel's experience in Macomb County that an habitual offender would not be offered a plea deal that included a reduction of the charges. Trial counsel also testified that he did not pursue the matter because when he discussed a possible plea with defendant, defendant was not willing to accept a plea offer where the term of imprisonment was five years.

By contrast, defendant testified that an offer was extended. According to defendant, trial counsel told him that the prosecution had offered a deal that included a minimum sentence of 58 months and dismissal of the drug possession charges in exchange for defendant pleading guilty to unlawful imprisonment and assault with intent to do great bodily harm. Defendant could not recall exactly when trial counsel advised him of this plea offer, but believed it occurred before the September 20, 2018 pretrial hearing. Defendant further asserted that he would have accepted the plea offer if given the opportunity. Indeed, he testified that he would have accepted whatever the prosecutor offered. Defendant denied that he ever told trial counsel that he would be unwilling to accept any deal that included a minimum sentence of five years.

At the conclusion of the *Ginther* hearing, the trial court found that while trial counsel had diligently tried to get an agreement from the prosecutor, no agreement was reached and no plea offer was ever formally extended. Consequently, the trial court denied defendant's motion for a new trial based on ineffective assistance of counsel.

It is axiomatic that the existence of a plea offer is central to defendant's claim of ineffective assistance of counsel. He asserts that an offer was made, but not pursued. A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The testimony of trial counsel supports the trial court's finding that no plea offer was ever made, and the trial court found trial counsel's testimony credible. MCR 2.613(C) provides that "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." In light of the deference given the trial court's factual findings, defendant was not deprived of effective assistance of counsel in the plea-bargaining proceedings.

## C. FAILURE TO FILE A POSTJUDGMENT MOTION[7]

Next, defendant argues in his Standard 4 brief that trial counsel was ineffective because he failed to file a posttrial motion asserting that the jury's verdict was against the great weight of the evidence. We disagree.

"A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Solloway*, 316 Mich App 174, 182-183; 891 NW2d 255 (2016) (citations and quotations omitted). Generally, a verdict may only be vacated when the verdict is

---

[7] Defendant's Standard 4 brief also raised an issue challenging trial counsel's failure to admit his custodial statement in his defense. After the brief was filed, the *Ginther* hearing was held, and appellate counsel conceded that this claim was no longer being pursued.

not reasonably supported by the evidence, but rather it "is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). Questions regarding credibility are not sufficient grounds for relief unless the "testimony contradicts indisputable facts or laws," the "testimony is patently incredible or defies physical realities," the "testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror," or the "testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (citations and quotation marks omitted).

There is no indication that any of these factors are present in this case. The evidence did not preponderate heavily against the jury's verdict. Indeed, there was overwhelming evidence in support of defendant's guilt beyond a reasonable doubt. Further, there is no indication that the testimony presented by the prosecution defied physical facts or laws, or that the testimony was patently incredible or inherently implausible. Defendant argues that the complainant lacked credibility because of minor discrepancies in her recounting of events. He also contends that Gurnett's testimony refuted the complainant's version of events. Conflicting testimony and credibility disputes are insufficient to establish that a conviction is against the great weight of the evidence. *Id.* at 643-644. Because the verdict is not against the great weight of the evidence, trial counsel did not render ineffective assistance when he failed to file a motion for new trial on this ground. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

## VI. SENTENCING

Defendant asserts that his sentences are unreasonable, disproportionate, and constitute cruel and unusual punishment. None of these claims have any merit.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (citation omitted). However, defendant did not receive a departure sentence. Defendant concedes that his 160-month minimum sentence is within the sentencing guidelines range of 58 to 171 months. This Court is required to affirm a sentence that is within the guidelines range absent an error in the scoring of the guidelines or where the trial court relied on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). Because defendant has not shown that the trial court erred in scoring the sentencing guidelines or that the court relied on inaccurate information when sentencing defendant, we must affirm defendant's guidelines sentence.

The limitation on review for reasonableness does not apply, however, to claims of constitutional error. *People v Powell*, 278 Mich App 318, 323; 750 N2d 607 (2008). The United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII, as well as "grossly disproportionate sentences." *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). Furthermore, "[a] sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). Defendant acknowledges that his sentence is within the accurately scored guidelines range, and he offers no explanation as to what unusual circumstances might make his presumptively proportionate sentence disproportionate. *Id*. His subsequent remorse for the

offenses and his drug addiction does not constitute unusual circumstances. Instead, defendant simply attempts to equate his minimum sentence of 160 months to a life sentence. However, given defendant's age of 42, it is inappropriate to characterize his sentence as closely resembling a sentence of life without parole. In sum, defendant has failed to overcome the presumption of proportionality. Accordingly, he has not demonstrated that his sentence constitutes cruel and unusual punishment. For these reasons, we reject defendant's contention that he is entitled to resentencing.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra